KANE (MASON v.). See Case No. 9,241.

KANE (PAUL v.). See Case No. 10,843.

## Case No. 7,609.

### KANE v. RICE.

[10 N. B. R. 469.] [2]

District Court, E. D. Michigan. 1873.

CHATTEL MORTGAGE—VALIDITY—FILING — DELIVERY AND POSSESSION—CREDITORS.

1. C & D, partners in trade, executed a chattel mortgage covering a portion of the firm property, conditioned to indemnify and save E harmless from all indorsements theretofore or thereafter made by him for the accommodation of C & D, with the usual power to take possession and sell in case of default, but with the express provision that, until default, the mortgaged property should remain in the possession of C. & D. They retained possession of this property, dealing with it in all respects as their own, and selling portions of it in the usual course of their business with the knowledge and consent of E, until he took possession of what remained. One of the mortgagors resided in Detroit, and the other in the township of Oscoda. The mortgage was not filed for a year and a half after it was given, and then only in Detroit. At the time E took possession of the property in question the insolvency of C & D was a notorious fact, and E knew that they were insolvent. Bankruptcy proceedings were commenced shortly after the filing of the mortgage, and the assignee brought an action to recover the property sold by E, or its value. Held, that in all cases where a chattel mortgage is given by more than one, and the mortgagors reside in Michigan, but in different townships or cities, the mortgage must be filed in each and every of the townships or cities in which any of the mortgagors reside, and a filing in one only of such townships or cities, or in any number less than all is not a compliance with the statute, and is of no validity or effect whatever.

[Cited in Granger v. Adams, 90 Ind. 89.]

2. The mortgage in this case not having been accompanied by an immediate delivery, and followed by an actual change of possession of the things mortgaged, and not having been filed in the township where one of the mortgagors resided, as required by law, the same was and is absolutely void as against the creditors of the mortgagors.

3. The taking of possession by E before commencement of the bankruptcy proceedings does not help his case, because the right of the creditors to attack the mortgage for want of possession and filing, had attached before he took possession, and such possession cannot be referred to or based upon the mortgage; therefore E had no greater right to take possession of the property in question than any general and unsecured creditor, for security of his debt, nor did the consent of the debtors to his taking possession help the matter, because, the debtors being then insolvent, to his knowledge, and the transaction being within the requisite limit as to time, it was clearly such a preference as by section 35 of the bankrupt act [of 1867 (14 Stat. 534)], conferred upon the assignee the right to recover the property, or its value.

[Cited in Jones v. Smith, 38 Fed. 381; Pearsall v. Smith, 149 U. S. 231, 13 Sup. Ct. 835.]

[Cited in Edwards v. Entwisle, 2 D. C. 48.]

This is an action of trover [by Edward E. Kane, assignee, against Delos E. Rice] for a quantity of lumber and other personal property alleged to have been unlawfully converted by the defendant. On the 4th day of January, 1871, John F. Parkes and Charles R. Parkes, then partners in trade in the firm name of J. & C. Parkes, executed and delivered to the defendant a chattel mortgage on the property in question with other property, conditioned to indemnify and save defendant harmless from all indorsements theretofore or thereafter made by him for the accommodation of the mortgagors, with the usual power to take possession and sell in case of default, but with the express provision that until default the mortgaged property should remain in the possession of the mortgagors. The mortgagors remained in possession of the mortgaged property, treating it and dealing with it in all respects as their own, and selling portions of it in the usual course of their business, with the knowledge and consent of the mortgagee, until the mortgagee took possession of what remained, being the property in question, as hereafter stated. At the time of the execution and delivery of the mortgage, and up to their bankruptcy, John F. Parkes resided in the city of Detroit, in this state, and Charles R. Parkes resided in the township of Oscoda, in the county of Iosco, in this state. As partners

1 [Reported by Hon. William Cranch, Chief Judge.]
2 [Reprinted by permission.]

they owned and occupied a saw mill at Oscoda, and dealt in lumber and building materials at Detroit. The property covered by the mortgage was situated wholly in Detroit. The mortgage was not filed in the proper office in either Detroit or Oscoda until July 18th, .1872, when it was filed in Detroit; but it was never filed in Oscoda, and no affidavit of renewal has ever been filed in either place. Soon after the filing in Detroit, and on the 5th day of August, 1872, the defendant took possession of the property in question by consent of the Parkeses, and caused the same to be sold at public auction on the 15th day of October, 1872, himself becoming the purchaser of a large portion of it. At or about the time of the filing of the mortgage in Detriot, the mortgagors failed to pay certain of their notes and a draft, and defendant's liability as indorser thereon became fixed, and he was afterwards obliged to pay, and did pay the same, amounting in the aggregate to much more than the proceeds of the property, or the value thereof. At the times of the filing of the mortgage in Detroit, of the taking possession of the property by the defendant, and of the sale of it by him, the Parkeses were notoriously insolvent, and defendant knew them to be so. Although not expressly stated in the agreed statement of facts that the Parkeses were indebted during those times, yet such was ascertained to be the fact, and the case was argued and submitted upon that hypothesis. The bankruptcy proceedings were commenced on the 24th day of September, 1872, and the plaintiff herein having been appointed assignee, and qualified as such, brought this action to recover for the property so taken possession of and sold by defendant. A jury having been waived the case was tried by the court, and it was submitted on an agreed statement of facts (except as to values, which was left to oral proofs), substantially as above set forth, and containing a further statement that the mortgage was given and received in good faith, and without any actual intent to hinder, delay, or defraud the creditors of the mortgagors.

Mr. Kane, in pro. per.
J. J. Speed, for defendant.

LONGYEAR, District Judge. The first question for consideration is as to the validity of the chattel mortgage as against the creditors of the mortgagors. The solution of that question depends upon the construction to be given the statutes of Michigan upon that subject. Section 4706 (being section 10 of chapter 167) of the Compiled Laws of 1871 (volume 2, p. 1458) is as follows: "Every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which shall hereafter be made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers, or mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the township clerk of the township, or city clerk of the city, or city recorder of cities having no officer known as city clerk, where the mortgagor resides, except when the mortgagor is a non-resident of the state, when the mortgage, or a true copy thereof, shall be filed in the office of the township clerk of the township, or city clerk of the city, or city recorder of cities having no officer known as city clerk, where the property is."

The ground upon which a mortgage of chattels, without an immediate delivery, and an actual and continued change of possession of the things mortgaged, was held void at the common law as to creditors, was a presumption of fraud arising from the want of a change of possession; and it was always held, that the presumption might be rebutted by showing good faith, and the absence of any intent to hinder, delay, or defraud creditors, etc. But the statute goes further and makes the mortgage absolutely void. It provides the means by which the mortgage may be made valid. but the faith and intent with which the mortgage was given and received, do not constitute an element, and therefore are entirely immaterial where the means provided have not been complied with. That the legislature so intended is evident by a comparison of the section above quoted with those of a preceding section (4703), of the same chapter, relating to absolute sales, assignments, etc., without a change of possession. In the latter case, the provision is, that such transactions "shall be presumed to be fraudulent and void," as against creditors, etc., while in the former case the provision is, that the transaction shall be absolutely void. By the section in regard to sales, etc., it is also further provided, that the presumption of fraud raised by want of change of possession. may be rebutted by showing good faith and absence of any intent to hinder, delay, or defraud creditors or purchasers, while the section in relation to chattel mortgages contains no such provision. The only means provided by which a mortgage of goods and chattels not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, can be made valid in Michigan, is the filing of the same in the proper office, as provided by section 4706 of the Compiled Laws of 1871, above quoted. It must therefore be held in this case, that unless the mortgage in question was so filed it is absolutely void as against the creditors of the mortgagees, whether given and received in good or bad faith, or whether with or without any intent to hinder, delay, or defraud such creditors.

This brings us to the questions arising out of the neglect to file the mortgage at all for

nearly a year and a half, and there is only one of the places where the mortgagors resided. The view the court takes, however, of the neglect to file in each of the places where the mortgagors respectively resided, renders it unnecessary to consider the question arising out of the neglect to file for so long a time. The statute in regard to filing, supra, uses the singular number, "mortgagor." In this case there were two mortgagors, and they resided in different places; one in the city of Detroit, and one in the township of Oscoda, in Iosco county, but both within this state. And the statute of Michigan (1 Comp. Laws 1871, p. 92, § 2) provides that, "every word importing the singular number may extend to and embrace the plural number," etc. As applied to a case of the kind now under consideration, "may," as used in that statute, has the sense of "shall," so that as applied to this case the word "mortgagor," in the phrase "where the mortgagor resides," as used in the statute in regard to filing, must be read "mortgagors." Therefore, in all cases where a chattel mortgage is given by more than one, and the mortgagors reside in this state, in different townships or cities, the mortgage must be filed in each and every of the townships or cities in which any of the mortgagors reside; and a filing in one only of such townships or cities, or in any number less than all, is not in compliance with the statute, and is of no validity or effect whatever. It has been so held in Maine under a statute substantially the same as that of Michigan. Rich v. Roberts, 48 Me. 548; same parties, 50 Me. 395. It makes no difference that the mortgage was filed where the property was, because such filing is made valid only in cases where the mortgagors are non-residents of the state. It results that, the mortgage not having been accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, and not having been filed in the township of Oscoda, where one of the mortgagors resided, as required by law, the same was and is absolutely void as against the creditors of the mortgagors. In this case the creditors of the mortgagors all became such before the filing of the mortgage in Detroit, and most, if not all of them, after the giving of the mortgage. Even if the filing in Detroit alone were to be held a sufficient compliance with the statute, or, if it had been filed also in Oscoda at the same time, it would not be difficult to show that the mortgage ought not and could not be permitted to prevail as against those creditors in the bankruptcy court. The views already advanced, however, render such showing unnecessary, and I forbear. But, it is claimed, the mortgage was good as against the mortgagors, and the defendant having taken possession under the mortgage and by their consent, before commencement of bankruptcy proceedings, his claim of lien must certainly be held good from that time; even if it was

not thereby made good from the giving of the mortgage by relation back. This claim is based upon the assumed theory, that in such case the assignee has no greater rights than the bankrupts, and because they could not question defendant's claim of lien, the assignee cannot. If that theory be correct, then defendant gained nothing by taking possession, so far as his right of lien is concerned, because the mortgagors had no more right to question the mortgage or defendant's rights under it, before than after defendant took possession. But the theory assumed is not correct as applied to a case like the present, as will now be shown. The assignee represents the creditors as well as the bankrupts, and has the right and power, and it is his duty, to enforce the rights of the former as well as to observe and carry out the obligations and contracts of the latter. He occupies the position of judgment-creditor to all intents and purposes, so far as his relations in that regard are concerned; and whenever such creditor could enforce rights which the debtor could not, the assignee can. The source of his powers and the mode of their exercise, are different; but the right upon which they are based and the theory upon which they proceed, are the same in both cases. Transactions by or with debtors which are void as to creditors, whether for fraud, for want of completeness in any of their incidents, or for any cause whatever, are equally void as against the assignee.

The rule that none but a judgment-creditor can attack such transactions, does not mean that such creditor must have had a judgment and an execution when such transactions were taking place. It is sufficient for the right to attach to him that he was a creditor. A judgment is necessary only to enable him to exercise the right; and as already seen, the assignee in bankruptcy occupies the position of such judgment-creditor. The taking of possession by defendant before commencement of the bankruptcy proceedings, does not help his case, for two reasons: (1) As between him and the general creditors the right of the latter to attack the mortgage for want of possession or filing had attached before defendant took possession, and such possession therefore cannot be referred to or based upon the mortgage. (2) As to creditors, the delivery of the mortgaged property to the mortgagee, must have accompanied the giving and receiving of the mortgage, by the express terms of the statute, where, as in this case, there was no filing. At the time the defendant had no greater right to take possession of the property in question than any general and unsecured creditor, for security of his debt. Neither did the consent of the debtors to defendant's taking possession as he did, help the matter, because the debtors being then insolvent to the knowledge of defendant, and the transaction being within the requisite limit as to time, it was clearly such a preference as, by the express provisions of

section 35 of the bankrupt act, confers upon the assignee the right to recover the property or its value.

I am aware that the decisions of some of the district and circuit courts of the United States, and also of some of the state courts, have been somewhat conflicting upon some of the propositions here involved. But I regard the principle of those propositions authoritatively settled by the supreme court of the United States, in Leavenworth Bank v. Hunt, 11 Wall. [78 U. S.] 391, 394. In that case the facts were almost identical with those of the present case, and the statute of Kansas, upon which the decision was based, was substantially the same as that of Michigan here under consideration, and the assignee was allowed to recover. The decisions of state courts of last resort upon questions arising under state statutes, and especially those affecting title to property thus arising, are always followed by the federal courts; I find no reported decisions, however, of the supreme court of this state, nor am I aware of any unreported decision of that court, involving the questions here involved. The ruling of the United States supreme court must therefore prevail. The court was referred to a later decision of the United States supreme court (Gibson v. Warden, 14 Wall. [81 U. S.] 244), as overruling, or to some extent modifying, their decision in Leavenworth Bank v. Hunt [supra]; but I do not regard it in that light. It results, that the plaintiff is entitled to recover in this case. Judgment for plaintiff for the value of the property, as proven on the trial, and interest on the same from date of commencement of the bankruptcy proceedings to this date, amounting in all to five hundred dollars and sixty-six cents, and costs of suit.

———

KANE (TUCKER v.). See Case No. 14.220.

KANE (VAN REIMSDYK v.). See Cases Nos. 16,871 and 16,872.

KANKAKEE COUNTY (WARRENER v.). See Case No. 17,205.

KANOUSE (MARTIN v.). See Case No. 9,-162.

KANOWRS (REUTGEN v.). See Case No. 11,710.

KANSAS CITY PUB. CO. (FARMERS' & DROVERS' SAV. BANK v.). See Case No. 4,652.